**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES A. DANN,

                                        Petitioner,

            - v -                                                    Civ. No. 9:05-CV-969
                                                                              (LEK/RFT)

MICHAEL RABIDEAU,

                                        Respondent.

**APPEARANCES:**                                    **OF COUNSEL:**

JAMES A. DANN
Petitioner, *Pro Se*
03-B-1097
Groveland Correctional Facility
Sonyea Road
Sonyea, NY 14556

HON. ANDREW M. CUOMO                            SENTA B. SIUDA, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Attorney for Respondent
615 Erie Blvd. W., Suite 102
Syracuse, NY 13204-2465

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Petitioner James A. Dann brings this Petition for a Writ of *Habeas Corpus* pursuant

to 28 U.S.C. § 2254, challenging his incarceration on the following grounds: (1) the police did not

test the blood alcohol content (BAC) of a witness before she gave inculpatory statements against

Petitioner; (2) he was denied a fair trial when testimony of his prior bad acts was introduced at trial;

(3) the prosecution failed to provide corroboration for accomplice testimony; (4) the prosecution

improperly impeached its own witness; (5) he was denied a fair trial when the district attorney

provided unsworn expert testimony, vouched for the credibility of his own witness, and then vouched for the lack of credibility of that same witness; (6) the trial court improperly marshaled evidence and provided one-sided jury instructions resulting in an unfair trial; and (7) the jury returned inconsistent verdicts.[1]  Dkt. No. 4, Am Pet.  For the following reasons, it is recommended that the Petition be **denied**.

## I.  BACKGROUND

On June 12, 2002, a Chenango County Grand Jury indicted Petitioner on the crimes of arson in the third degree and conspiracy in the fourth degree.  Dkt. No. 8, Resp., State Court R. on Appeal (hereinafter "R."), Indictment No. 2002-55, dated June 12, 2002, at R107-110.[2]  The indictment alleged that on June 14, 2001, Petitioner aided and abetted Trudy L. Ruland in setting fire to the house of Petitioner's estranged wife, Jonna Dann.  *Id.*  The prosecution's case was substantially based on the trial testimony and statements of Trudy Ruland, who, during the course of being arrested for disorderly conduct at a bar, and in a state of intoxication, confessed to setting fire to Jonna Dann's house at the behest of her boyfriend, James Dann.  Trial Tr., dated Jan. 27, 2003, at pp. 245-46, 267-68, 284-96, 320, & 386-87.

Petitioner's trial commenced on January 27, 2003.  Testifying for the prosecution was the victim, Jonna Dann, who stated that Petitioner James Dann was her ex-husband and the father of her two children.  Trial Tr. at p. 172.  Over objection by Petitioner's counsel, the Honorable W. Howard Sullivan, Chenango County Court Judge, permitted Jonna Dann to testify regarding Petitioner's prior

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The State Court Record on Appeal has been numbered R1-R130.  We will refer to this numbering for ease of reference.

bad acts against her.  However, Judge Sullivan gave a curative instruction to the jury that the testimony was to be considered only for establishing a motive, and not Petitioner's propensity to commit arson or any other crime.  *Id*. at p. 173.  Jonna Dann testified that James Dann had physically and mentally abused her: he would hit, head-butt, and call her names, and had pushed her down the stairs.  *Id*. at p. 174.  In addition, she testified that on one occasion he came up behind her, cut her hair off, choked her, head-butted her, kneed her in the stomach, kicked her, and told her he was going to kill her.  *Id*. at p. 175.  Jonna Dann obtained a protective order in family court against Petitioner after that incident, and returned to family court on numerous occasions in order to continue the order of protection, to report support violations, and to address Petitioner's breaking of the protective order.  *Id*. at pp. 175-84.  She also stated Petitioner constantly threatened to kill her.  *Id*. at pp. 183-84.

On June 14, 2001, Jonna Dann's mother called her at work to tell her there was a fire in a house on the road she lived on, at which point she returned home to find it was her house that was ablaze.  *Id*. at pp. 184-85.  The next morning Jonna saw Petitioner at their son's pre-kindergarten picnic and told him about the fire.  *Id.* at pp. 193-94.  Petitioner showed little reaction and did not ask if everyone was ok, but later came up behind her and said, "It's pay back time, bitch, you know that song 'Burning down the house?,'" and then called her at work on June 28, 2001, and said, "How do we sleep while our beds are burning?"  *Id*. at pp. 194, 234, & 240-41.

New York State Trooper Leonard Switkowski testified that on the night of November 17, 2001, while responding to a complaint of an unruly customer at the Community Lodge in the Village of Sidney, he encountered Trudy Ruland, who was yelling and screaming.  Trial Tr. at pp. 244-46.  After Ruland refused to leave the bar, she was arrested for disorderly conduct and placed inside

Switkowski's police car. *Id*. at p. 246. Inside the car, Ruland was upset and confused as to why her boyfriend, James Dann, did not come outside of the bar, and then stated that she had done a lot of things for him, including burning down a house. *Id*. at pp. 245-46.

Switkowski took Ruland to the police station, *Mirandized* her, and took her statement. *Id*. at pp. 247-49. Switkowski testified that Ruland exhibited signs of drunkenness but wasn't "falling down drunk. She could walk, she could carry on a conversation. But there was the odor of alcohol about her and the bloodshot eyes, things like that." *Id*. at p. 250. Ruland stated to Switkowski that she had started a fire at the home of Petitioner's estranged wife, and that Petitioner told her how to do it and supplied her with the materials needed, which included lighter fluid, sticks, paper, and meat in case the dog troubled her. *Id.* at p. 253. On cross examination, Switkowski testified he did not ask Ruland how many drinks she had imbibed, nor how long she had been drinking, but affirmed that Ruland was intoxicated at the time she made her statement. *Id*. at pp. 267-68.

Trudy Ruland testified that she was Petitioner's girlfriend and lived with him on and off from February 2001 through January 2002. *Id*. at pp. 280-81. Ruland testified about previous conversations with Petitioner in which they discussed burning the house and how Jonna Dann did not deserve the house. *Id*. at pp. 288-89 & 294-95. On June 14, 2001, Petitioner told her that "tonight was the night." *Id*. at p. 308. That night, around 10 p.m., Ruland went to Jonna Dann's house, entered through a back door into a storage area, and lit the fire. *Id*. at pp. 284-88. Petitioner showed her on a map he had drawn where the door was in the back of the house, and gave her a bag of newspaper, sticks, a soda bottle filled with kerosene, and steaks in case the dogs started barking. *Id*. at pp. 291 & 310-11.

On cross examination, Ruland stated that on November 17, 2001, she began drinking at 3

p.m., and consumed over twenty drinks before her arrest. *Id*. at pp. 319-20. State police investigator Arthur Daniels testified that he interviewed Ruland after she gave her statement to Trooper Switkowski on November 17th. *Id*. at p. 386. Daniels stated that Ruland "had been drinking, but was able to carry on a conversation, able to answer questions, respond appropriately to those questions," and was not falling down or staggering. *Id*. at pp. 386-87. Daniels said Ruland's statement was corroborated by the information she provided about a children's picnic table on the deck, and the point of origin of the fire. *Id*. at pp. 423-25.

Charles Anderson, a certified level two fire investigator, was the senior investigator on a team of four that investigated the fire. *Id*. at pp. 433 & 436-37. His team concluded that the point of origin of the fire was at or near the doorway opening into the storage area at the back of the house. *Id*. at pp. 457-58. Furthermore, the team determined the fire was incendiary and not a natural accident. *Id*. at p. 458. Finally, Anderson stated Ruland's November 17th statement was consistent with the physical evidence his team observed, particularly with respect to the point of origin and cause of the fire. *Id*. at pp. 462-63.

For his part, Petitioner testified that he never physically abused his ex-wife, Jonna Dann, and stated that he had been arrested ten (10) to twelve (12) times as a result of frivolous complaints she made to the authorities. *Id*. at pp. 506-07 & 509-10. He also denied having anything to do with the fire at Jonna Dann's home as well as conversing with Ruland about burning down the house, but acknowledged his past relationship with Ruland and stated that she lived with him for a period of time. *Id*. at pp. 522-23 & 526-27. Petitioner stated that on the night of the fire, he went over to his father's house between nine-thirty and ten o'clock p.m., and that Ruland later joined them between eleven and twelve p.m. *Id*. at pp. 582-83.

The jury subsequently convicted Petitioner of arson in the third degree, but acquitted him of the conspiracy charge. *Id.* at p. 778.  Judge Sullivan sentenced Petitioner to an indeterminate prison term of four (4) to twelve (12) years, and, in addition, issued an order of protection against him. R., Sentencing Tr., dated Apr. 18, 2003, at R17.

Petitioner appealed the judgement of his conviction to the Appellate Division, Third Department, raising the same grounds raised in the instant Petition.  Dkt. No. 8, Resp., Pet'r Appellate Br. and App.  The Appellate Division dismissed his appeal, affirming his conviction. *People v. Dann*, 788 N.Y.S.2d 264 (N.Y. App. Div., 3rd Dep't 2005).  Petitioner's application for leave to appeal to the New York State Court of Appeals was denied. *People v. Dann*, 831 N.E.2d 975 (N.Y. Ct. App. 2005).  On August 2, 2005, Petitioner filed this federal *habeas* action. Dkt. No. 1, Pet.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)  ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones*

*v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003).  The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B.  Failure to Test Ruland's BAC

Petitioner asserts that because the police failed to test the BAC of Trudy Ruland at the time she made inculpatory statements about Petitioner, he was denied the right to a fair trial.

Prosecutors have a constitutional duty to disclose exculpatory evidence to the defense, *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963), however, there is no constitutional duty to create exculpatory evidence on behalf of a defendant, nor to "perform any particular tests[,]" *Arizona v. Youngblood,* 488 U.S. 51, 59 (1988) ("The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer might have bene exculpatory, but the police do not have a constitutional duty to perform any particular tests.").

In this case, several witnesses testified on the issue of Ruland's level of intoxication on the night of her arrest and subsequent statement to police, including Ruland herself.  Both Trooper Switkowski and investigator Arthur Daniels testified that it was clear Ruland had been drinking, but was coherent enough to make a voluntary and truthful statement.  Petitioner's counsel vigorously cross-examined these witnesses on this issue, and the jury was given the opportunity to assess Ruland's credibility and the truthfulness of her statement to the police.  Trial Tr. at pp. 267-68, 319-21, & 405-411.  Finally, although Ruland testified she could not remember making the statement to police, she affirmed that the substance of that statement was true.  Trial Tr. at p. 314.  Because Petitioner has identified no constitutional violation, this claim should be **dismissed**.

### C.  Testimony of Prior Bad Acts

Petitioner asserts he was denied a fair trial because testimony of his prior bad acts was introduced over his objection.  In New York State, evidence of prior crimes or bad acts is admissible if relevant to prove something other than propensity to commit the act or crime, such as motive, intent, or identity.  *People v. Molineux*, 61 N.E. 286, 294 (N.Y. 1901).  Similarly, there is no federal constitutional bar against the introduction of evidence of prior bad acts.  In fact, Federal Rule of Evidence 404(b) specifically permits the introduction of such evidence when its purpose is to prove, *inter alia*, motive, opportunity, and intent, but not "the character of a person in order to show action in conformity therewith."  FED. R. EVID. 404(b); *see also Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (stating that "prior acts are admissible to show proof of motive[.]").

However, the Due Process Clause of the Fourteenth Amendment prohibits the introduction of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice."  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citation and quotation marks

omitted);  *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("Erroneous evidentiary

rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of

a writ of habeas corpus.  Rather, the writ would issue *only* where petitioner can show that the error

deprived her of a *fundamentally fair* trial." (emphasis in original) (citations omitted)).  The standard

for determining whether an errant admission of evidence deprived a defendant of a fair trial is

"whether the erroneously admitted evidence, viewed objectively in light of the entire record before

the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt

that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

In the case at bar, Jonna Dann, Petitioner's estranged wife, was permitted to testify that

Petitioner physically and mentally abused her and threatened her life on numerous occasions.  Trial

Tr. at pp. 172-83.  Judge Sullivan gave a curative instruction to the jury, stating:

> [T]he fact that I am allowing this witness to testify about potentially prior bad acts
> on the part of the defendant is to be considered by you of no proof whatsoever that
> the defendant possessed a propensity or a disposition to commit the crime charged
> in this Indictment or in any other crime.  It is not offered for such purpose and is not
> to be considered by you for that purpose.  I charge you that such evidence may be
> considered by you only for the limited purposes of showing a motive, and no other.

*Id*. at p. 173.

Thus, Jonna Dann's testimony was admitted to prove Petitioner's motive for committing arson by

identifying and explaining their acrimonious and abusive relationship.  The testimony in question

was not offered to prove Petitioner had a propensity to act against the law, as Judge Sullivan's

curative instruction makes clear.

Therefore we cannot conclude that the admission of Jonna Dann's testimony about

Petitioner's prior bad acts was erroneous under either New York state or federal evidentiary

standards, much less that it deprived Petitioner of his constitutional right to a fair trial.  *See, e.g.,*

*Robertson v. Artus*, 2008 WL 553200, at *10 (N.D.N.Y. Feb. 27, 2008) (admission of testimony regarding a past fight in which petitioner was involved was relevant and admissible to prove motive); *see also Toland v.* Walsh, 2008 WL 820184, at *13 (N.D.N.Y. Mar. 26, 2008) (fact that evidence would have been admissible under the federal rules of evidence suggested that no due process violation occurred) (citations omitted); *Sierra v. Burge*, 2007 WL 4218926, at *6 (S.D.N.Y. Nov. 30, 2007) (admission of prior bad acts was not erroneous under New York law because it explained motive).

As such, it is recommended that the Petition be **denied** on this claim.

### D.  Corroboration of Accomplice Testimony

In his Appellate Brief, Petitioner cited to N.Y. Crim. Proc. L. § 60.22 for the proposition that the prosecution was required to provide corroboration for the testimony of his alleged accomplice, Trudy Ruland, and failed to do so.[3]  Dkt. No. 8, Resp.,  Pet'r Appellate Br. and App. at p. 38.  It is well-settled that claims based solely on state law grounds are generally not cognizable on federal *habeas* review.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted)  Furthermore, Petitioner has not identified a parallel federal constitutional right requiring the same corroboration, nor does one appear to exist.  *See United States v. Elusma,* 849 F.2d 76, 79 (2d Cir. 1998) ("An accomplice's testimony . . . need not be corroborated to establish guilt.") (citing, *inter alia, Caminetti v. United States,* 242 U.S. 470, 495 (1917)); *see also Huntley v. Superintendent,* 2007 WL 319846, at *17 (N.D.N.Y. Jan. 30, 2007) ("A conviction may be sustained on the basis of the testimony of a single accomplice 'so long as that testimony is  not incredible on its face and is

---

[3] N.Y. Crim. Proc. L. § 60.22(1) states "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."

capable of establishing guilt beyond a reasonable doubt . . . . [L]ack of corroboration . . . goes to the 'weight of the evidence, not to its sufficiency[.]'") (quoting *United States v. Diaz,* 176 F.3d 52, 92 (2d Cir. 1999) (other citations omitted)).  Thus, because this claim is purely a state law matter, it is barred from *habeas* review.  *See Mariani v. Kelly*, 2001 WL 1860961, at *4 (N.D.N.Y Jan. 17, 2001).

Even assuming, *arguendo*, that his claim was not barred, it would still fail because the record shows that Ruland's testimony was corroborated.  Senior Fire Investigator Charles Anderson's testimony that the fire was incendiary and that the location of the starting point of the fire was at the doorway at the back of the house corroborated Ruland's testimony about how and where she started the fire.  Trial Tr. at pp. 433-63.  In addition, Jonna Dann's testimony about Petitioner's vindictive statements to her after the fire occurred corroborated Ruland's testimony about Petitioner's role in the arson, and his motive for committing the arson.  *Id*. at pp. 194, 234, & 241.

For these reasons, the Petition should be **denied** on this ground.

### E.  Improper Impeachment

As his fourth ground for *habeas* relief, Petitioner contends that the prosecutor was improperly allowed to impeach its own witness, Trudy Ruland, thus depriving him of a fair trial.  As previously noted, to the extent Petitioner seeks relief pursuant to state evidentiary rules,[4] no such relief is available on federal *habeas* review.  *Estelle v. McGuire*, 502 U.S. at 67.  To the extent

---

[4] In his Appellate Brief, Petitioner cites to N.Y. Crim. Proc. L. § 60.35(3), which states:

When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal proceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing recollection of the witness in a manner that discloses its contents to the trier of facts.

Petitioner is asserting his due process rights under the Fourteenth Amendment were violated, that claim must also fail.

When questioned on direct examination about being arrested and giving a statement to police on November 17, 2001, Ruland testified she did not remember the whole incident with the police. *Id*. at pp. 300-01. The court granted the prosecution's motion to treat Ruland as a "hostile witness," thereby allowing the prosecutor to ask leading questions; the Court, however, specifically warned that if he moved to impeach Ruland, additional procedures would be necessary. *Id*. at p. 307. Resuming direct examination, the prosecutor handed Ruland a copy of her statement to police to refresh her recollection, but she maintained she did not remember giving the statement. *Id*. at pp. 311-14. However, Ruland testified that although she could not remember making the statement to the police, its content was true. *Id.* at p. 314. The court admitted a copy of the statement into evidence. *Id*. at p. 315. Based on the foregoing, it does not appear that Ruland was, in fact, impeached. Rather, she was merely asked leading questions as a "hostile witness" and her sworn statement, the substance of which she affirmed, was offered into evidence.

In any event, under federal law, a party may impeach any of its witnesses for any reason. *See United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1993) (citing Rule 607 of the Federal Rules of Evidence). "Where the Government has called a witness whose corroborating testimony is instrumental to constructing the Government's case, the Government has the right to question the witness, and to attempt to impeach him, about those aspects of his testimony that conflict with the Government's account of the same events." *United States v. Eisen*, 974 F.2d 246, 262-63 (2d Cir. 2002).

Even assuming, *arguendo*, that the evidence was erroneously admitted, the standard for

determining whether such an admission deprived a defendant of a fair trial is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d at 18.  Given Ruland's testimony that the content of her sworn statement was true, considering also the totality of her testimony, which largely duplicated and amplified the information in her statement, and the independent corroboration from other sources, we cannot conclude that in the absence of the introduction of her sworn statement, a reasonable doubt would have existed.

For all these reasons, it is recommended that this claim be **denied**.

### F.  Petitioner's Remaining Claims are Procedurally Barred

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on an "adequate and independent state ground." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  "[T]his rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted).  Thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed*, 489 U.S. at 264 n.10.

On direct appeal, the Appellate Division dismissed Petitioner's remaining claims because they had not been preserved at trial. *People v. Dann*, 788 N.Y.S.2d at 797-98.  Specifically, Petitioner's fifth claim that the prosecutor made prejudicial comments on summation, sixth claim that the trial court improperly marshaled the evidence, and seventh claim that the jury reached

inconsistent and repugnant verdicts were dismissed for failure to make timely objections at trial pursuant to New York's contemporaneous objection rule. *Id.*

The contemporaneous objection rule, codified as N.Y. CRIM. PROC. L. § 470.05(2), requires that in order to preserve a claim for appeal, a defendant must make his objection known at trial, so as to give the trial court the opportunity to remedy its own errors. The Second Circuit Court of Appeals has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) (citing *Bossett v. Walker,* 41 F.3d 825, 829 n.2 (2d Cir. 1994)); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (violation of the contemporaneous objection rule is an adequate and independent state ground). Thus, the Appellate Division based its denial of these claims on an adequate and independent state ground, and they are therefore procedurally barred.

We may review these procedurally barred claims only if Petitioner demonstrates cause for the default and resulting prejudice, or alternatively that failure to review the claims will result in a "fundamental miscarriage of justice." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. Thompson*, 501 U.S. 722, 748-750 (1991). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. at 753, *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999). Examples of external factors include "interference by official," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992).

In the case at bar, Petitioner has offered no such cause for his failure to timely object. When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*,  2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Petitioner has also failed to demonstrate or even argue that failure to consider these claims would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir. 2001) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  Petitioner has provided no "new evidence" that would support such a claim, *Schlup v. Delo*, 513 U.S. 298, 327 (1995), nor any other reason to question the validity of the verdict he received.

 For these reasons, it is recommended that Petitioner's remaining claims be **denied**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107,

112 (2d Cir. 2000); and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE</u>**

**<u>APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72, 6(a), & 6(e).


Date:  June 2, 2008
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-16-*